**W. R. GRIMSHAW COMPANY et al.,
Appellants,**

v.

**Pauline C. ZOLLER et al., Appellees.**

No. 14414.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 3, 1965.

Rehearing Denied Dec. 1, 1965.

---

Carl Wright Johnson, Alfred W. Offer, Joe Meador, Nat L. Hardy, San Antonio, for appellants.

Rudy Rice, James H. Brannon, San Antonio, for appellees.

BARROW, Justice.

Mrs. Pauline C. Zoller brought this suit on behalf of the legal beneficiaries of Elmore C. Zoller, deceased, against W. R. Grimshaw Company, an Oklahoma Corporation, and Elliot G. Keeling, a resident of Harris County, Texas, seeking to recover damages for fatal injuries sustained by her husband, Elmore C. Zoller, on a construction site known as the Wonderland Shopping Center in San Antonio. Grimshaw Company was the general contractor on this job, Keeling was the iron worker foreman and Zoller was an employee of a subcontractor, Martin Wright Electric Company. Texas Employers' Insurance Association, the compensation carrier for Martin Wright Co., intervened asserting its right to subrogation to the extent of compensation, medical and funeral benefits paid by it.

Keeling filed a plea of privilege seeking to remove the cause of action against him to Harris County. This plea was overruled and he perfected his appeal to this Court where the order was reversed and the cause remanded for retrial. See Keeling v. Zoller, 388 S.W.2d 274. Before the plea of privilege appeal was determined, the suit was tried on the merits and judgment was rendered on the jury verdict, whereby Mrs. Zoller, her two sons and Texas Employers' recovered joint and several judgment against Grimshaw Co. and Keeling for the damages sustained by reason of the death of Zoller.[1]

On a retrial of Keeling's plea of privilege a jury failed to find any acts of negligence against him and judgment was entered transferring the cause as to him to Harris County, Texas. Appellees concede on this

---

1. The material findings of the jury are:
   1. The temporary lighting in the area where Zoller fell was inadequate.
   2. Grimshaw Co. knew or by the exercise of ordinary care should have known it was inadequate.
   3. Grimshaw Co. failed to provide adequate temporary lighting at the time and on the occasion in the area where Zoller fell.
   4. Such failure was a proximate cause of his injury and death.
   5. The steel dowel on which deceased fell was not bent over prior to the time of his fall.
   6. Grimshaw Co. knew or should have known the dowel was not bent over.
   7. Grimshaw Co. failed to bend over the dowel prior to Zoller's fall.
   8. and 9. Such failure was negligence and a proximate cause.
   10. There was wire mesh in the area where Zoller fell immediately prior to the time of his fall.
   11. Grimshaw Co. knew or should have known of same.
   12. Grimshaw Co. permitted the wire mesh to be in the area.
   13. and 14. This permitting was a proximate cause.
   15–22. Similar findings against Keeling as against Grimshaw Co. as to the steel dowel and wire mesh being in the area.
   23. Zoller did not fail to keep a proper lookout (proximate cause unanswered).
   25. Zoller did not have full knowledge of the condition of the premises where he fell immediately prior thereto. (Appreciation and voluntary exposure issues were conditionally submitted and unanswered.)
   32. This was not an unavoidable accident.

appeal that the judgment must therefore be reversed and the cause remanded as to Keeling.

Grimshaw Co. urges by this appeal that plaintiffs (appellees here) failed to establish that it breached any duty owed to Zoller; that the evidence shows as a matter of law that the condition of the premises where Zoller was injured was open and obvious; the injuries sustained by Zoller were, as a matter of law, solely caused by his own negligence; plaintiffs failed to establish that Zoller was a business invitee at the time and place of his injury; the verdict of the jury will not support a judgment for damages; there was no duty upon Grimshaw Co. to furnish temporary lighting in the area where Zoller was injured; and the trial court abused its discretion in overruling Grimshaw Co.'s motion for continuance pending determination of the appeal of Keeling's plea of privilege.

Grimshaw Co. was the general contractor for the construction of the Wonderland Shopping Center which was to be one unit of about seven acres, consisting of two levels, in which would be located many different stores. The construction site was located on a seventy-acre tract. Martin Wright Co. had an electrical subcontract on part of the project and its employees, including Zoller, had worked on the job for several months. Zoller was injured about 9:00 p. m. on July 24, 1961, in the lower level, when he fell, striking his head on an upright steel reinforcement rod which pierced his right eye and produced injuries resulting in his death.

For about two weeks prior thereto, Wright Co.'s employees were working overtime on the project because the electrical work was running behind the other work. On this night about thirty to forty electrical employees worked on the Woolworth store job, which was located on the second level. Their tools were stored in a tool shed on the first, or basement, level which was reached from the Woolworth job by a stairwell located, according to the various witnesses,

from seventy to two hundred feet north of the tool shed entrance. The basement area was still in rough construction stage. Immediately in front of the tool shed doors was a U-shaped truck well opening to the south and facing the tool shed doors. This truck well was surrounded by a concrete beam, described as being from 1½' to 3' high. On the west and north sides of the truck well a concrete floor had been poured, but the area was still unfinished and numerous boards and other construction materials were lying on the floor. On the east side of this truck well was an area extending about two hundred feet to the outside of the building, which was called a fill area. Concrete had not been poured on this area and it consisted of a dirt and caliche base.

For sometime prior to the accident in question, Wright Co.'s employees, with the permission of Grimshaw Co., had used the tool shed in the basement for storing their tools and materials. In going to and from the tool shed to the second level, three routes were indiscriminately used by these employees to the stairwell. They walked directly north across the truck well and up a ramp made of boards; went to the west across the cement floor, or went to the east across the fill area. Wright Co.'s employees testified that the truck well was many times littered with trash and could not be used. It was called a truck well because there was a ramp leading to the outside whereby trucks could drive down, presumably to bring in materials, haul off trash, etc. There was no testimony that any route was prohibited. Grimshaw Co. urged that the proper route was through the truck well, however, in response to a defensive issue, the jury found that there was no designated pathway. There is considerable testimony concerning the lighting in this area. In addition to such natural light as would come in through the open end of the basement to the east of the truck well, there was a light located over the stairwell and fluorescent lights were located in the tool shed. The latter furnished light through the shed doors. When these doors were

closed, however, the lighting in the basement was poor. This would be particularly so on a rainy night, as it was on July 24, 1961.

On this night the Wright Co. employees were working overtime until 9:00 p. m. Shortly before this time, they left the second floor work site and proceeded down the stairwell to lock up their tools and materials in the tool shed. Two routes were available for leaving the basement area to go to their cars. They could walk out the truck ramp to the east or they could return up the stairwell and go out the building. It had rained a great deal during this evening and the truck ramp was muddy and difficult to negotiate. As a result, under the undisputed evidence, all of Wright Co.'s employees on this night were leaving by the stairwell. There was evidence that the truck well was littered with trash and debris at this time. In any event, most of Wright Co.'s employees used the route west of the truck well, although several went to the east across the fill area.

There is no direct evidence concerning the route of Zoller. One co-employee testified that Zoller and another employee, Dockins, turned to the east towards the truck ramp. Dockins did not testify. While some of the other employees were proceeding to the stairwell, they heard the noise of Zoller's fall and went to his aid. He was found in the fill area with his feet entangled in part of a roll of wire mesh of a type which had been used by the iron workers employed by Grimshaw Co. a few days earlier in reinforcing the concrete floor. In falling, Zoller's head struck a $\frac{3}{8}''$ reinforcing rod which was sticking upright a foot or so out of the concrete beam supporting the east wall of the truck well.

■ Under the settled Texas law, Zoller, who was on the job site as an employee of a subcontractor of Grimshaw Co. was an invitee of Grimshaw Co. In McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954), it was said: "A general contractor in control of premises owes a duty to the employees of subcontractors similar to that owed by an owner or occupier of land to his invitees. Smith v. Henger, 148 Tex. 456, 228 S.W.2d 425, 20 A.L.R.2d 853."

■ Grimshaw Co. owed the duty to Zoller as an invitee to keep the premises in a reasonably safe condition. This included the duty to inspect and discover dangerous conditions. Its duty was to protect its invitees from dangers of which it, the occupier knew, or (because of its duty to inspect) should have known, in the exercise of ordinary care. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.1963); Genell, Inc. v. Flynn, 163 Tex. 632, 358 S.W.2d 543 (1962); McKee v. Patterson, supra; Smith v. Henger, supra. This duty extended to the entrance and exits on the premises. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114 (1950); Parking, Inc. v. Dalrymple, Tex.Civ.App., 375 S.W.2d 758, no writ hist.

■ Grimshaw Co. asserts that there is no finding that Zoller was an invitee at the particular time or place where he was injured. It is a correct rule of law that a person may be an invitee as to certain parts of the premises but not as to others. See Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.1963); Burton Construction & Shipbuilding Co. v. Broussard, 154 Tex. 50, 273 S.W.2d 598 (1954); Pogue v. Allright, Inc., 375 S.W.2d 533, Tex.Civ.App., wr.ref. n.r.e. Here, however, there is no evidence to raise a fact issue as to Zoller's status. Grimshaw Co.'s superintendent knew that the electricians used the lower level in going to and from the tool shed. Zoller was injured shortly after locking up his tools and this occurred at a place that was directly on a route used by the workmen in going from the tool shed to the stairwell. Zoller was an invitee at this place under the undisputed evidence.

■ The jury found that Grimshaw Co. failed to provide adequate temporary lighting in the area where Zoller fell; that

Grimshaw Co.'s employees failed to bend over the steel rod on which Zoller fell, and that Grimshaw Co. permitted the wire mesh to be in this area. Each of these acts was found to be negligence and a proximate cause of Zoller's injury and death. These findings, which are separate and apart from those against Keeling, properly support the judgment against Grimshaw Co. in this suit brought for injuries to the invitee.

Grimshaw Co. urges that it owed no duty to Zoller as a matter of law, in that any dangerous conditions in the area were open and obvious to Zoller. Under the "no duty" doctrine, an invitee cannot recover if he knows of the condition, realizes and appreciates the danger, or is charged with such knowledge, realization and appreciation. Wesson v. Gillespie, 382 S.W.2d 921 (Tex.1964); Halepeska v. Callihan Interests, Inc., supra; Justice Greenhill, Assumption of Risk, Vol. XVI, Baylor Law Review 111.

■ The jury found that Zoller did not have full knowledge of the condition of the premises where he fell, immediately prior thereto, and therefore did not answer other issues which would have inquired as to his appreciation of the danger and voluntary assumption of the risk. We cannot say that the record establishes these essential requirements as a matter of law. Nor can we say that Zoller was guilty of contributory negligence as a matter of law.

Five photographs were introduced into evidence, which were taken the morning after Zoller's fall. They show that the fill area is relatively clean in this immediate area except for the one partial roll of wire mesh. There was testimony that this route was frequently used in going to and from the stairwell, and from the photographs there is no unusual risk portrayed on this route. Under the evidence the light was sufficient to where one could see large objects, however, it cannot be said that the wire mesh was open and obvious as a matter of law. There is no evidence that Zoller knew of the wire mesh prior to this inci-

dent. Although Zoller knew of the inadequate lighting, it cannot be said as a matter of law that he knew of the dangerous condition created by the wire mesh and the poor lighting. The trial court properly submitted these issues to the jury.

Grimshaw Co. further asserts that it had no duty concerning the inadequate lights, in that Wright Co. had the electrical subcontract and if the lighting was inadequate, Wright Co. should have erected temporary lights. The subcontract was introduced in evidence and under same Wright Co. bound itself to the Grimshaw Co. by the terms of the original contract, and to assume all obligations that contractor had assumed toward the owner. There was evidence, however, that Grimshaw Co.'s consent was required before temporary lighting could be installed, and that this consent was given on several other occasions. There was also evidence that complaints had been made to Grimshaw Co. of the inadequate lighting in this area prior to this accident, but additional lighting had not been authorized. There is nothing in the subcontract which would change the general contractor's duty to keep the premises in a reasonably safe condition for its invitees.

■ On June 5, 1964, Keeling's plea of privilege was overruled and appeal of this order was perfected in this Court of Civil Appeals on June 16, 1964. Rule 385(c), Texas Rules of Civil Procedure, provides that where an appeal is perfected from an order *sustaining* a plea of privilege, transfer of the venue and trial upon the merits is suspended pending the appeal. There is no such provision staying proceedings pending an appeal from an order *overruling* a plea of privilege, and it has been held that the case may be tried on the merits irrespective of the appeal. Newlin v. Smith, 136 Tex. 260, 150 S.W.2d 233; Pugh v. Childress & Marshall, Tex.Civ.App., 207 S.W.2d 182, no wr.hist.

The trial on merits had been set for the week of June 8, 1964, but on June 9 motion for continuance was filed, wherein

**482**

Grimshaw Co. and Keeling sought to have the case continued until Keeling's appeal from the order overruling his plea of privilege could be determined by the appellate court. Among other prejudicial effects set forth, Grimshaw Co. complained that had said plea been sustained, Grimshaw Co., being a non-resident of Texas, could have removed the cause to the United States District Court. This motion is endorsed: "6/9/64. Granted. Set June 15, 1964" and signed by "Robert R. Murray." Apparently the motion was overruled other than a week's postponement as the case proceeded to trial on June 16, 1964. By their motion for new trial appellants complained of the trial court's overruling this motion for continuance and forcing them to trial before determination of their appeal.

■ Grimshaw Co. concedes that the granting of its motion for continuance was a matter within the discretion of the trial court, but asserts that the overruling of same was an abuse of discretion. No harm is pointed out by Grimshaw Co., and we can see none in the fact that Keeling was a party defendant before the jury along with Grimshaw Co. The testimony of Keeling clearly demonstrates his full support of the defendants' position. Grimshaw Co. urges, however, that it was deprived of its valuable right to remove the case to the United States District Court. The trial court had jurisdiction over Grimshaw Co. at all times. No allegation was made that Keeling was fraudulently joined as a defendant. Cf. Covington v. Indemnity Ins. Co., 5 Cir., 251 F.2d 930, Cert. Denied, 357 U.S. 921, 78 S.Ct. 1362, 2 L.Ed.2d 1365. Grimshaw Co. made no attempt to remove this case at any time. We cannot say from this record that the trial court abused its discretion in refusing to continue the trial on the merits until the determination of the plea of privilege (which event did not occur until over seven months later). Even if the appeal turned out favorably, at that time Grimshaw Co. might elect not to remove the suit.

The judgment of the trial court is reversed and the cause remanded as to the appellant Elliot Keeling. It is in all things affirmed as to the appellant W. R. Grimshaw Company. The costs are taxed one-half to appellant Grimshaw Company and one-half to appellees.