**BROWN & ROOT, INC., et al., Appellants,**

v.

**SERVICE PAINTING COMPANY OF BEAUMONT, Inc., Appellee.**

No. 7032.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 20, 1969.

Rehearing Denied March 6, 1969.

Vinson, Elkins, Weems & Searls, Houston, for appellants.

Seale & Stover, Jasper, Ross, McLemore, Collie & Richards, Beaumont, for appellee.

KEITH, Justice.

This appeal follows the entry of a judgment denying appellants indemnity under the provisions of a contract between appellants and appellee. Basically, this statement of the case, agreed to by appellee, is taken from appellants' brief:

Suit was brought in the District Court of Jasper County by Betty Jo Carpenter, widow of Chester M. Carpenter, deceased, against Brown & Root, Inc. and Eastex Incorporated, seeking recovery of damages for personal injuries which caused her husband's death. A third-party action was filed by Brown & Root, Inc. and Eastex Incorporated against Service Painting Company of Beaumont, Inc.[1] for indemnity pursuant to the provisions of a sub-contract between Brown & Root and Service Painting Company of Beaumont.

At the time of the occurrence in question, Brown & Root, as general contractor, was installing a conveyor system in the Eastex Incorporated plant at Evadale, Texas. Chester M. Carpenter was a painter employed by Service Painting Company of Beaumont, Inc. and was painting underneath a bumper when it descended, crushing him to death.

A settlement was made between Brown & Root, Inc., Eastex Incorporated, and Betty Jo Carpenter, individually and as guardian of her minor daughter. The subrogated workmen's compensation insurance company's claim was also settled. The trial court found that the settlement was made in good faith and was reasonable and prudent under the circumstances.

The third-party action of appellants, Brown & Root, Inc. and Eastex Incorporated, against appellee, Service Painting Company of Beaumont, Inc., was severed and was tried before the court without a jury.

---

1. No specific mention will be made hereinafter of Eastex and the references to Brown & Root will be either as appellant or indemnitee. Service Painting will be referred to as either appellee or indemnitor.

The trial court found that Chester M. Carpenter, on August 29, 1966, at the time of the occurrence which caused his death, was working within the scope of his employment for Service Painting Company of Beaumont, Inc., that the work being done by employees of Service Painting Company of Beaumont, Inc. was work in the performance of an agreement of August 11, 1966, between Brown & Root, Inc. and Service Painting Company of Beaumont, Inc., and that said agreement provided for the work to be performed in accordance with a continuing sub-contract which had been made between said parties dated May 19, 1965. The trial court then quoted the provision of indemnity, which we reproduce hereinafter.

In addition, the trial court found that at the time he received the injuries which caused his death, Chester M. Carpenter was performing work as a painter in the area underneath the bumper which descended upon him, causing his injuries and death. However, the trial court further held that the death of Chester M. Carpenter was caused solely by negligence of pipe fitter employees of Brown & Root, Inc., which negligent acts and omissions were unrelated to the performance of the painting sub-contract work, and held that appellants, Brown & Root, Inc. and Eastex Incorporated, were not entitled to recover from appellee, Service Painting Company of Beaumont, Inc., under the provisions of the written indemnity agreement.

In its general contract with Eastex, appellant was required to install an automatic handling system for rolls of paper, which included a bumper device which could be raised to control the rolls of paper and could be lowered or retracted below the floor level. The painting sub-contract called for painting work, including the area under the bumper. On the day in question, Carpenter and another employee of appellee were engaged in painting underneath the bumper in a pit below the floor level.

There being a leak in the air line controlling the bumper, it became necessary for pipe fitters of appellant to bleed the air from the line before cutting it. One of appellant's employees did this, and the bumper descended, crushing Carpenter at a time when he was actually engaged in his painting activities. The raising and lowering of the bumper had absolutely nothing to do with the painting activities.

The sub-contract contained this provision:

"Subcontractor [Service Painting Company of Beaumont, Inc.] agrees to indemnify and to save General Contractor [Brown & Root] and Owner [Eastex] harmless from and against all claims, suits (including counsel fees and other expenses of suit), whether groundless or not, judgments and awards on account of any damage to property or injury (including death) to person (including any damage or injury to the property or person of any employee of Subcontractor, General Contractor, or Owner) which may be caused or alleged to have been caused in whole or in part by, or which may occur or be alleged to have occurred in connection with, the performance of the Sublet Work."

The court found that the death of Carpenter was caused solely by the negligence of the pipe fitter employee of appellant; that such negligent act was "wholly unrelated to the performance of the painting sub-contract work and had no connection therewith;" that the work of the pipe fitter employees of appellant was likewise wholly unrelated with the painting work and had no connection therewith; the work being done by the pipe fitter employees of appellant was under the exclusive jurisdiction of the appellant as general contractor. Appropriate conclusions of law followed these findings of fact.

Appellant contends that under the undisputed evidence the death of Carpenter occurred "in connection with the performance of the painting sub-contract work"

with an alternative point that there was insufficient evidence to support the finding that Carpenter's death was not caused by "and did not occur in connection with" the performance of the painting sub-contract work. The finding is also challenged as being so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Taking the affirmative of the issue, and contrary to the findings of the trial court, appellant argues that the death of Carpenter was caused "in whole or in part by or occurred in connection with the performance of his work" for appellee under the sub-contract.

The fifth and final point spells out in detail the contention of appellant, and we quote it:

"Under the provisions of the sub-contract, indemnitor (Service Painting Company of Beaumont, Inc.) is liable to the indemnities (Brown & Root, Inc. and Eastex Incorporated) for damages arising out of the sole negligence of indemnitees where such damages were caused in whole or in part by or occurred in connection with the performance of work under the sub-contract."

The parties have grouped the points and the reply thereto and we shall consider them jointly.

Appellant's argument is deceptively simple and, at first blush, seems unanswerable. It proceeds along these lines: Carpenter was killed at a time when he was painting under the bumper which descended upon him. Not only was he acting in the scope of his employment, but also it was the very work which he was doing which placed him in the position of danger wherein he met his death. Thus, in painting the area beneath the bumper, Carpenter was clearly effectuating the object of the sub-contract. It then follows, according to appellant, that "he met his death in connection with work which he was performing under the sub-contract" and appellants are entitled to indemnity.

Appellant's authorities are not only respectable but many, from our own Supreme Court, are considered to be leading cases on the subject of indemnity. Each will be discussed hereinafter; but, appellee, countering with the decision of Westinghouse Electric Corporation v. Childs-Bellows, 352 S.W.2d 806 (Tex.Civ.App., 1961, error ref.), contends that it is controlling over appellant's authorities. Accepting appellee's invitation, we first consider *Childs-Bellows*.

Childs-Bellows was the general contractor while Westinghouse was the sub-contractor for the installation of the elevators in a new bank building. During the course of the work, two employees of Westinghouse, in separate accidents, while in the "scope of their employment, in furtherance of the Work" of Westinghouse, were struck by falling objects while they were in the elevator shaft. After settlement with the workmen, suit was brought on the indemnity agreement contained in the sub-contract. This agreement is set out at length in the opinion (at page 807) and is not copied here. We do, however, set out the pertinent provisions of the contract in *Childs-Bellows* and our case in parallel columns:

### *Brown & Root Clause*

"Subcontractor agrees to indemnify and to save General Contractor * * * harmless from and against all claims * * * which may be caused or alleged to have been caused in whole or in part by, or which may occur or be alleged to have occurred in connection with, the performance of the Sublet Work."

### *Childs-Bellows Clause*

"Subcontractor further agrees to and shall indemnify and save harmless Contractor from and against any and all loss, claim, * * * growing out of, or incident to or resulting from the performance, or failure to perform the Work or the provisions of this Subcontract."

Pointing out that in *Childs-Bellows,* as here, there was no express provision indemnifying the general contractor against his own negligence, the court said:

"In the instant case, however, in view of the provisions of the indemnity agreement, it is clear that indemnity was intended to extend only to injuries to persons growing out of or incident to or resulting from performance, or the failure to perform, on the part of *Westinghouse,* the work of installing the elevators. The agreement does not show an intent by the parties to indemnify Childs-Bellows for injuries to persons resulting from work which was under the exclusive jurisdiction of Childs-Bellows as general contractor. *The injuries sustained by the Westinghouse employees were not injuries growing out of any work undertaken by Westinghouse but, according to the stipulations, were due solely to negligence of employees of the general contractor, Childs-Bellows, in work which in so far as the stipulations show had no connection whatever with the installation of the elevators, and work with which Westinghouse had no connection.*" (Emphasis supplied) (352 S.W.2d at 808).

The Supreme Court first cited *Childs-Bellows* in Ohio Oil Company v. Smith, 365 S.W.2d 621 (Tex.Sup.1963), and distinguished it by italicizing these words:

"* * * Here, Smith agreed to indemnify Ohio for all claims for injury to any person arising directly or indirectly from the workover operations, and the injuries did result from the work undertaken by Smith." (365 S.W.2d at 626).

It was shown conclusively in *Ohio Oil* that Smith's employee was using one of the

tanks furnished by Ohio at the very time he was injured. *Ohio Oil,* under the undisputed facts of this case, does not support appellant's position, although it places reliance thereon.

Appellant cites Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S.W. 2d 631 (Tex.Sup.1963), decided the same day as *Ohio Oil,* supra, in support of its right of indemnity. The distinction between *Spence & Howe* and *Childs-Bellows* is made by the court in this manner:

"This case is clearly distinguishable from Childs-Bellows in which the actions resulting in injury,—the dropping of heavy items of material upon the Westinghouse employees,—was in no way related to the installation of elevators called for by the Westinghouse contract. In the present case, Cummings was injured as a result of an action *directly connected with and growing out of the operations covered by the contract of which the indemnity agreement was a part.*" (Emphasis supplied) (365 S.W.2d at 637).

In the two cases just mentioned, *Ohio Oil* and *Spence & Howe,* the Supreme Court cited several of the authorities relied upon by the appellants here.[2] Having considered the cases carefully, in our opinion they are neither apposite nor controlling here.

Appellant's reliance upon Alamo Lumber Co. v. Warren Petroleum Corp., 316 F.2d 287 (5th Cir., 1963) is likewise unavailing. Judge Wisdom, after quoting at length from *Childs-Bellows* and mentioning a prior case from the Fifth Circuit, had this to say:

"In neither case was the injury sustained *'in connection with'* the work required by the contract. Here, however, Alamo had contracted to install cabinets,

---

2. Houston & Tex. Cent. Ry. Co. v. Diamond Press Brick Co., 111 Tex. 18, 226 S.W. 140 (1920) ; James Stewart & Co. v. Mobley, 282 S.W.2d 290 (Tex.Civ. App., 1955, error ref.) ; Crews Well Service v. Texas Company, 358 S.W.2d 171 (Tex.Civ.App., 1962, error ref. n.r.e.).

and when the two men were overcome by gas they were admittedly installing the cabinets near the uncapped pipe. Since the only requirement for indemnity is that the employee's injury have some connection with Alamo's work, Warren is entitled to recovery over against Alamo." (316 F.2d at 290, emphasis by the court).

It was conclusively shown in *Alamo Lumber* that the work of installing the cabinets under the sub-contract—the subject of the sub-contract—necessitated the removal of pipes leading to a sink, and the gas backed up in the open pipe, injuring the men. It was the act of Alamo's employees which created the very condition causing their injury. No such situation exists here.

Finally, appellant cites Monical & Powell, Inc. v. Bechtel Corp., 404 S.W.2d 911 (Tex.Civ.App., 1966, error ref. n. r. e.). In that case, employees of the sub-contractor were operating a heavy tractor clearing right-of-way when they broke a buried pipeline belonging to Phillips Pipeline Company, and an explosion occurred with resulting injuries. The court allowed the general contractor to recover over against the sub-contractor. The sub-contractor relied upon *Childs-Bellows,* but the court said that the "case is distinguishable" and referred to the remarks found in *Spence & Howe* (365 S.W.2d at 635).

Carpenter's death did not grow out of any work undertaken by Service Painting Company; but, according to the undisputed evidence and the findings of the court, was due solely to negligence of employees of Brown & Root performing work under the general contract. This work had no connection with the painting and was work with which Service Painting Company had no connection.

This case, in our opinion, is ruled by *Childs-Bellows,* and so holding, appellant's points are all overruled and the judgment of the trial court is in all things affirmed.