**MARTIN WRIGHT ELECTRIC COM-**
**PANY, Appellant,**

v.

**W. R. GRIMSHAW COMPANY, Appellee.**

**No. 26260.**

United States Court of Appeals
Fifth Circuit.

Oct. 16, 1969.

Rehearing Denied and Rehearing En
Banc Denied Nov. 26, 1969.

Certiorari Denied April 6, 1970.

See 90 S.Ct. 1263.

Jack Hebdon, Groce, Hebdon, Fahey &
Smith, Josh H. Groce, San Antonio, Tex.,
for appellant.

Alfred W. Offer, San Antonio, Tex.,
Carl Wright Johnson, San Antonio, Tex.,
for appellee.

Before THORNBERRY and SIMP-
SON, Circuit Judges, and CASSIBRY,
District Judge.

CASSIBRY, District Judge:

This is an appeal from a judgment
awarding indemnity on the granting of
W. R. Grimshaw Company's motion for
summary judgment and denying the
cross-motion of Martin Wright Electric
Company for summary judgment.

We reverse, set aside the award of in-
demnity and grant the cross-motion of
Martin Wright Electric Company for
summary judgment.

On November 22, 1960 W. R. Grimshaw
Company [Grimshaw], the general con-
tractor for the construction of Wonder-
land Shopping Center near San Antonio,
Texas, entered into a subcontract
with Martin Wright Electric Company
[Wright] for the completion of certain of
the electrical work. This suit arises out
of a dispute as to the liability of Wright,
the indemnitor, to Grimshaw, the indem-
nitee, under the indemnity provisions of
this subcontract.

On the evening of July 24, 1961
Wright's electricians worked overtime on
the second level of the complex. As was
customary the crew devoted the last
fifteen minutes of their working time to
taking their tools to the basement level

to store them in a shed furnished by Grimshaw. While leaving the basement area after the tools were stored one of the employees, Elmo Zoller, tripped on some wire mesh and fell onto a metal dowel which pierced his right eye. He died as a result of the injury on August 1, 1961.

A suit was brought against Grimshaw in July 1963 in the state district court by the widow, Pauline C. Zoller, individually and as independent executrix of her husband's estate, and as guardian of their two minor sons, for damages sustained by reason of the injuries to, and death of, their husband and father. Upon commencement of this action Grimshaw gave notice of it to Wright and called upon Wright to defend the action, but Wright failed to do so. The workmen's compensation carrier for Wright, Texas Employers Insurance Association, intervened as a plaintiff and all plaintiffs, pursuant to a jury verdict, were awarded a total sum of $110,123.38.

This jury verdict was based upon several findings of negligence against Grimshaw. The jury found that the lighting in the area where Zoller fell was inadequate, that Grimshaw knew or should have known of its inadequacy, that Grimshaw failed to provide adequate temporary lighting at the time and on the occasion of Zoller's fall and such failure was a proximate cause of his injury and death; that there was wire mesh in the area where Zoller fell which Grimshaw knew or should have known about yet Grimshaw nevertheless permitted the wire mesh to be in the area and this was a proximate cause of the accident; that Grimshaw knew or should have known that the metal dowel on which Zoller fell was not bent over, that Grimshaw failed to bend over the dowel prior to Zoller's fall and that such failure was a proximate cause of his injury and death. It found no negligence attributable to Zoller.

Grimshaw was compelled to pay the judgment when it was affirmed,[1] and it brought this suit on October 3, 1966 to recover from Wright under the indemnity provisions of the contract the amount of the judgment, $110,123.28, plus the sums it had been compelled to pay in that suit for attorneys' fees and other expenses, a sum of $12,310.88, plus attorneys' fees in the instant suit, calculated at ten percent of the total or $12,243.41. Grimshaw filed motion for summary judgment on December 15, 1967, relying on the record of the case in the state court to show that no genuine issue as to any material fact exists in this cause, and Wright filed a cross-motion thereto. After hearing both parties on their motions for summary judgment the District Court sustained the plaintiff's motion, except for attorneys' fees in this case, and awarded it $135,247.45, which included the amount of the state court judgment, the expenses and attorneys' fees of that suit, and accrued interest at six percent in the amount of $14,313.29, and denied Wright's cross-motion. Wright appealed.

The District Court concluded that Wright owed Grimshaw indemnity, in spite of the findings of negligence against Grimshaw, under the following indemnity provision of the agreement between them:

"* * * and sub-contractor, notwithstanding any insurance that may be provided for or carried, agrees to hold Contractor harmless from any loss, injury or damage, either to persons or property, arising out of or resulting from the performance by subcontractor of the work covered by this sub-contract or occasioned by the act or neglect of sub-contractor or his agents, servants or employees."[2]

The agreement provided additionally that the subcontractor would keep the complex "* * * free and clear of

---

1. Grimshaw v. Zoller, 396 S.W.2d 477 (Tex.Civ.App.1965).

2. In furtherance of the indemnity, the agreement required that the subcontractor maintain workmen's compensation, automotive liability and public liability insurance.

mechanics liens or other encumbrances arising by (his) act or contract and shall, at (his) sole cost and expense, defend against any claim, lien, suit or proceeding that may be presented or filed arising out of and in the course of (his) performance of this sub-contract."

The trial judge, cognizant of the Texas rule that an indemnity agreement will be enforced in accordance with its terms even though the indemnitee may thereby be relieved of the consequences of his own negligence,[3] considered that no causal connection between the performance of the work and the thing that produced the injury was required by the terms of the contract, and that Zoller's injuries arose out of or resulted from the performance by Wright of the work covered by the subcontract within the terms of the indemnity agreement provisions because Zoller was still at work[4] when he was injured. He regarded the broad connotation given to the phrase "arising out of" in a policy of automobile insurance by the Fifth Circuit Court of Appeals in the case of Red Ball Motor Freight v. Employers Mut. Liability Ins. Co. of Wisconsin, 189 F.2d 374 (1951), as persuasive in determining the issue of indemnity under the contract language here.[5]

Appellant Wright contends that the District Court erred in deciding that the fact that Zoller was at the time of his injury within the scope of his employment within the meaning of the Texas Compensation Act was decisive of the issues presented in this case by this indemnity agreement; that the phrase in this agreement "arising out of or re-sulting from the performance by sub-contractor of the work covered by this contract" does not include an injury "arising out of or resulting from" acts or omissions of the general contractor occurring at a time when, and at a place where, no work of the subcontractor was being performed, and that any uncertainty, doubt or ambiguity in the contract must be construed in favor of Wright the indemnitor.

Appellee Grimshaw contends that the District Court correctly found that it was entitled to indemnity under the agreement because Zoller's injuries arose out of the performance of Wright's work because they clearly arose in connection with his attempt to perform and carry out Martin Wright's work covered by the subcontract, since his putting away of his employer's tools and equipment was as much a part of the subcontract as any other activity that needed to be carried out by Wright's employees on the job site. Additionally it contends that the words in the agreement "or occasioned by the act" of subcontractor or its employees show a broader application of the indemnity agreement, and when the ordinary rules of construction are applied, it is clear that the parties to the agreement intended that Wright fully protect, indemnify and hold Grimshaw harmless against all liability and damages resulting from injury to Wright's employees, regardless of how it arose, or whose act or negligence caused it.

The Texas Supreme Court delineated in Spence & Howe Construction Co. v. Gulf Oil Corporation, *supra* 365 S.W.2d

---

3. Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775; Ohio Oil Company v. Smith, 365 S.W.2d 621 (Tex.Sup.Ct. 1963); Spence & Howe Construction Company v. Gulf Oil Corporation, 365 S.W.2d 631 (Tex.Sup.Ct.1963). Since the instant case was argued, the Texas Supreme Court in City of Beaumont v. Graham, 441 S.W.2d 829 (1960), again recognized the rule, but regarded the indemnity agreement in that case as less broad than those in *Ohio Oil* and *Mitchell* so as not to extend to the negligence of the indemnitee.

4. Foster v. Carle, 160 S.W.2d 999 (Tex. Civ.App.1942, writ ref. want of merit), workmen's compensation problem of meaning of "course of employment" under Texas Compensation Act.

5. The Fifth Circuit stated that the phrase "arising out of" contains "words of much broader significance than 'caused by', and are ordinarily understood to mean 'originating from', 'having its origin in', 'growing out of' or 'flowing from', or in short, 'incident to, or having connection with', * * *."

at 632, that when a question relating to the construction of an indemnity contract is presented the wording of the instrument is to be considered in the light of the surrounding circumstances with the pertinent rules of construction applicable thereto to settle the meaning of the contract. The trial judge erred in this case in limiting the scope of his inquiry into the circumstances of the accident. The fact that an employee was at work when he was injured does not necessarily answer the question of whether his injury arose out of the performance of that work or resulted from or in connection with the work within the contemplation of indemnity provisions of contracts, according to a direct holding of the Court of Civil Appeals of Texas in the recent case of Brown & Root, Inc. v. Service Painting Company of Beaumont, 437 S.W.2d 630 (1969, error ref.).

In that case Service Painting Company had entered into a subcontract with Brown & Root, the general contractor for installation of a conveyor system in a plant at Evadale, Texas, for painting work wherein it agreed to indemnify Brown & Root against all claims for injuries occurring *in connection with* the performance of the sublet work. Brown & Root under its general contract was required to install an automatic handling system for rolls of paper, which included a bumper device that could be raised or retracted below the floor level. Chester M. Carpenter, an employee of Service Painting Company, was fatally injured while he and another employee were underneath the bumper in a pit below the floor level engaged in painting work called for by the subcontract. A leak occurred in the air line controlling the bumper making it necessary for pipe fitters of Brown & Root to bleed the air from the line before cutting it. One of their employees did this and the bumper descended crushing Carpenter at a time when he was actually engaged in his painting activities, but the raising and lowering of the bumper had nothing to do with the painting activities.

After Brown & Root had settled a claim against it by Carpenter's wife for damages for personal injuries which caused her husband's death, it claimed indemnity against Service Painting Company under the indemnity provision of the subcontract. The District Court denied indemnity and Brown & Root appealed contending that Service Painting Company was liable to it under the indemnity provision although the damages arose out of its sole negligence.

The Court of Civil Appeals said of the argument which is very similar to the argument of Grimshaw here:

"Appellant's argument is deceptively simple and, at first blush, seems unanswerable. It proceeds along these lines: Carpenter was killed at a time when he was painting under the bumper which descended upon him. Not only was he acting in the scope of his employment, but also it was the very work which he was doing which placed him in the position of danger wherein he met his death. Thus, in painting the area beneath the bumper, Carpenter was clearly effectuating the object of the sub-contract. It then follows, according to appellant, that 'he met his death in connection with work which he was performing under the sub-contract' and appellants are entitled to indemnity." (437 S.W.2d at 632).

After deciding that the Texas jurisprudence involving indemnity agreements did not support the appellant's argument, the court rejected it, and affirmed the judgment of the lower court saying:

"Carpenter's death did not grow out of any work undertaken by Service Painting Company; but, according to the undisputed evidence and the findings of the court, was due solely to negligence of employees of Brown & Root performing work under the general contract. This work had no connection with the painting and was work with which Service Painting

Company had no connection." (437 S.W.2d at 634)

An analysis of the relevant Texas jurisprudence shows that when the accident or injury is caused by the negligence of the indemnitee, the circumstances of the cause of the accident, the negligent acts or omissions, are examined by the courts to determine if they had any connection with, involvement with or relation to the performance of the work of the indemnitor. If they had none, the injuries are not considered as having any "connection with" the work, "arising out of" it, or "resulting from" it under language of contracts having such broad connotation.

The indication of the judicial propriety of this scope of inquiry into the circumstances of the accident in such cases was made in Westinghouse Electric Corporation v. Childs-Bellows, 352 S.W.2d 806 (Tex.Civ.App., 1961, error ref.). In that case Westinghouse, the subcontractor for the installation of elevators in a bank building, agreed to indemnify Childs-Bellows against all loss "growing out of, or incident to or resulting from the performance or failure to perform the work" of the subcontract. Employees of Westinghouse were injured while in the course and scope of their employment, in furtherance of the work of Westinghouse, when employees of Childs-Bellows negligently dropped objects down the elevator shaft upon them. The Court of Civil Appeals recognized that under Mitchell's Inc. v. Friedman, *supra*, it was not necessary for the parties to say in so many words that they intended to protect Childs-Bellows against liability for its negligence, if the terms of the agreement clearly indicated such intention, but reasoned

"In the instant case, however, in view of the provisions of the indemnity agreement, it is clear that indemnity was intended to extend only to injuries to persons growing out of or incident to or resulting from performance, or the failure to perform, on the part of Westinghouse, the work of installing the elevators. The agreement does not show an intent by the parties to indemnify Childs-Bellows for injuries to persons resulting from work which was under the exclusive jurisdiction of Childs-Bellows as general contractor. The injuries sustained by the Westinghouse employees were not injuries growing out of any work undertaken by Westinghouse but, according to the stipulations, were due solely to negligence of employees of the general contractor, Childs-Bellows, in work which in so far as the stipulations show had no connection whatever with the installation of the elevators, and work with which Westinghouse had no connection." (352 S.W.2d at 808)

Ohio Oil Company v. Smith, *supra*, and Spence & Howe Construction Co. v. Gulf Oil Co., *supra*, relied upon by Grimshaw, are cases in which indemnitors were found to be liable for injuries caused by the indemnitee's negligence, but examination shows that they are consistent with the *Brown & Root* and *Childs-Bellows* cases, *supra*. In the *Ohio Oil* case, Ohio Oil was held to be entitled to indemnity under the wording of the indemnity provision of a work-over contract "arising out of or attributed, directly or indirectly, to the operations of Contractor" where an employee of the indemnitor was injured when he fell from a defective tank furnished by Ohio Oil and *being used in the work-over operation.*

In the *Spence & Howe* case the indemnitee was held entitled to indemnity where its negligent employee operating its crane in the piling driving work of the indemnitor caused injury to an employee of the indemnitor under a contract wording "arising by reason of accidents * * * in connection with such work."

Our careful study of the other cases decided by state courts in Texas relied upon by Grimshaw as supporting the opinion and judgment of the District Court convinces us that they are not

apposite to the problems presented by this case.[6]

The case of Macon v. Warren Petroleum Corporation, 202 F.Supp. 194 (W.D.Tex.1962), affirmed in Alamo Lumber Company v. Warren Petroleum Corporation, 316 F.2d 287 (5th Cir. 1963), relied upon by the District Judge in his opinion, would appear at first blush to support the argument of Grimshaw that, if Zoller was at work when he was injured, his injuries arose out of his work. In that case Alamo Lumber Company had a contract with Warren Petroleum Corporation to perform certain work at Warren's gasoline plant near Fashing, Texas in which Alamo agreed to indemnify Warren for damages "which arise out of or in connection with the activities of [Alamo]". Two of Alamo's employees were overcome by gas fumes that were negligently permitted by Warren to be introduced into the room where they were doing carpentry work under the contract. Alamo resisted Warren's claim for indemnity arguing that the negligent act of Warren which caused the injuries was unrelated to the activities of Alamo. Warren contended that the injuries undisputedly arose in connection with the activities of Alamo "it being obvious that the plaintiffs would not have been injured if they had not been working at the place and time in question." The District Court concluded that the plaintiffs' injuries clearly arose in connection with their activities under the contract and allowed recovery. The Fifth Circuit Court of Appeals affirmed with the following discussion of the circumstances:

"During the course of Alamo's construction in the laboratory, it was found necessary to remove a sink, and two of the pipes leading into it, a gas pipe and an intake water pipe, were plugged up. A third pipe, for sewer drainage, was disconnected but was left open. Waste gas from Warren's natural gasoline plant backed up in the sewer and was discharged through the open pipe into the laboratory while two of Alamo's employees were working there. Both men were overcome by the poisonous gas and became unconscious before they could get out of the room." (316 F.2d at 288)

"* * *

"* * * Here * * * Alamo had contracted to install cabinets, and when the two men were overcome by gas they were admittedly installing the cabinets near the uncapped pipe. Since the only requirement for indemnity is that the employee's injury have some connection with Alamo's work, Warren is entitled to recovery over against Alamo." (316 F.2d at 290)

The Court of Civil Appeals of Texas in the *Brown & Root* case shows by its discussion of the *Alamo Lumber* case that it would not regard it as supporting the argument Grimshaw makes here. After quoting the last paragraph above that court said:

"It was conclusively shown in *Alamo Lumber* that the work of installing the cabinets under the sub-contract—the subject of the sub-contract—necessitated the removal of pipes leading to a sink, and the gas backed up in the open pipe, injuring the men. It was the act of Alamo's employees which created the very condition causing their injury." (437 S.W.2d at 634)

The injury to Zoller in the instant case was caused by the negligence of Grimshaw,[7] and the lighting in the

6. Houston & T.C.R. Co. v. Diamond Press Brick Co., 111 Tex. 18, 222 S.W. 204 (1920); James Stewart & Co., Inc. v. H. B. Mobley, 282 S.W.2d 290 (Tex. Civ.App.1955, writ ref.); Mitchell's Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957); Gulf, Colorado and Santa Fe Railway Company v. McBride, 159 Tex. 442, 322 S.W.2d 492 (Tex.Sup.Ct.

1959); Crews Well Service v. Texas Company, 358 S.W.2d 171 (Tex.Civ.App. 1962, writ ref.); Monical and Powell, Inc. v. Bechtel Corp., 404 S.W.2d 911 (Tex.Civ.App.1966, writ ref).

7. Grimshaw suggested in brief that Zoller's own act was the cause of his injury and on argument of the case counsel contend-

basement area, the wire mesh, the metal dowel nor Grimshaw's omissions in regard to them causing the injuries had any relation to, connection or involvement with the performance by Wright of the electrical work under the subcontract, and his injuries therefore cannot be regarded as arising out of or resulting from the performance by Wright of the work covered by the subcontract, and Wright is not liable to Grimshaw under the indemnification provisions of the contract.

We find no merit in the contention that the parties to the subcontract in this case intended that Wright fully protect, indemnify and hold Grimshaw harmless against all liability and damages resulting from injury to Wright's employees, regardless of how it arose, or whose act or negligence caused it by the further words in the agreement "or occasioned by the act" of subcontractor or its employees.

The judgment in favor of appellee is reversed, the award of indemnity is set aside, and the cross-motion of appellant for summary judgment is granted dismissing the action.

Reversed and rendered.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before THORNBERRY and SIMPSON, Circuit Judges, and CASSIBRY, District Judge.

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

ed that Zoller was killed by his own negligence and the negligence of his fellow employees in that they did not have for their use lights that were necessary to keep them from stumbling and falling, or had not installed the necessary lights. Grimshaw's motion for summary judgment was submitted on the basis of the case in which judgment was rendered against it and in which Zoller was found to be free of negligence. We find nothing in the record in that case to support a finding of negligence on the part of Zoller or his fellow employees on the occasion of this accident. No reason suggests itself for disagreeing with the jury in that case that the responsibility for the inadequate lighting in the basement area was Grimshaw's.