GOLDBERG, Circuit Judge:
This case originated with a suit by Roy A. Mott against ODECO to recover damages for injuries sustained when Mott fell from a defective ladder joining two levels of an offshore oil production platform owned by ODECO. ODECO denied liability and, in addition, impleaded Quality Equipment, Inc. (Quality), Mott’s employer on the date of the accident, claiming a right to indemnification under a provision of the Master Service Agreement between the two companies.
The district court granted a directed verdict in favor of Mott, holding that ODECO was strictly liable to Mott under Article 2322 of the Louisiana Civil Code and that contributory negligence was not a defense to a claim under this article. Neither Mott’s claim based on negligence nor ODE-CO’s defense of contributory negligence was submitted to the jury. The jury considered only the quantum of damages.
*275 ODECO’s third-party claim against Quality was tried to the court.[1] The court held that Quality’s duty to indemnify did not extend to claims for injuries caused by defects in existence prior to execution of the contract. Finding that the defect in the ladder, a missing rung, was of this character, the court entered judgment on the indemnification issue against ODECO. As an alternative ground for his decision, the trial judge held that ODECO had breached the Master Service Agreement by failing to comply with a regulation promulgated by the Occupational Safety and Health Administration (OSHA) governing the maximum distance between rungs on a ladder. 29 C.F.R. § 1910.27(b)(ii).
I. Mott’s Claim Against ODECO
On August 30, 1973, the date of the accident, plaintiff Mott was employed by Quality as a welder. He and other members of the Quality crew began work that day on a well jacket, a small, offshore production facility located in Block 119 of the Ship Shoal Area of the Gulf of Mexico. The facility had been out of production for some time and Quality was to do work necessary to bring it back into production. The structure, surrounding one wellhead, consisted of three levels. Access from the second to the third level was provided by a vertical ladder constructed of pipe.
Mott and the other crew members arrived on the platform about mid-morning. They ascended from the bottom, or boat landing level, to the top level where they worked until lunch hour. Lunch was to be served on board the boat. As Mott was descending by ladder from the third deck to the level below, he fell, sustaining serious injuries to his back. Subsequent examination of the ladder revealed that a rung of the ladder was missing, resulting in a gap of 21 inches between rungs located several feet above the deck.
Mott argues that the strict liability rule of Article 2322 of the Louisiana Civil Code is applicable to the facts at bar.[2] That article provides:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
We recently have had occasion to consider the import of this statute in detail. Moczygemba v. Danos & Curole Marine Contractors, 561 F.2d 1149 (5th Cir. 1977). There we stated that the “existence of a ‘building’ and its ‘ruin’ are the threshold requirements of Article 2322.” Id. at 1151.[3]
Once the “building” criterion is met, in order for liability to attach under Article 2322 the damage complained of must have been caused by “ruin.” “Ruin” for purposes of Article 2322 means the fall or collapse of a substantial component of the structure resulting from a “neglect to repair.” . . ,5 Under Louisiana law 5 Article 2322 also provides for recovery if the “ruin” is occasioned by a “vice in its original construction.”
the owner, here Defendant, is subject to liability without fault for all damages occasioned by a defective condition on the premises but only for damage occasioned by “ruin.”
Id. at 1151-52 and n. 5.
Our thorough review in Moczygemba of the governing Louisiana law thus *276 establishes two propositions. First, “ruin” is a prerequisite to liability under Article 2322. Whether the defect in the premises results from “neglect to repair” or a “vice in its original construction,” the damages must be. occasioned by “ruin.” Second, “ruin” for purposes of Article 2322 means the fall or collapse of a substantial component of the building.[4] While there have been some contrary indications in Louisiana jurisprudence, see e. g., Fontenot v. Sarver, 183 So.2d 75 (La.App.1966); Murphy v. Fidelity & Casualty Co. of N. Y., 138 So.2d 132 (La.App.1962), Moczygemba’s understanding of the “ruin” requirement is clearly supported by the most recent pronouncement of the Louisiana Supreme Court on the subject. See Davis v. Royal-Globe Insurance Co., 257 La. 523, 242 So.2d 839 (1971). In Davis, the plaintiff sought to recover damages for the lead poisoning of her children resulting from their ingestion of paint flakes which had fallen from the walls and ceilings of the defendant’s apartment building. After reaffirming that “ruin” must involve “fall or collapse” of a substantial component of the building, the court held that “falling paint flakes from an apartment ceiling were never intended by this article [2322] to be considered the “ruin” of a building . . .Id. at 842.
These principles compel reversal of the judgment in favor of Mott. The undisputed facts show that Mott’s injuries did not result from the fall or collapse of any part of the oil jacket. The ladder, though defective, remained intact, upright, and fixed in position. Since Mott’s injuries were not occasioned by “ruin” and since “ruin” is a prerequisite to any recovery under Article 2322, the judgment must be reversed and the case remanded for trial on Mott’s alternate theories of liability.
II. ODECO’s Claim Against Quality
ODECO’s claim for indemnity against Quality rests on paragraph 9 of the Master Service Contract between the two companies, executed on August 11, 1973.[5] Paragraph 9 provides:
(9) Subcontractor agrees to indemnify and hold harmless Drilling Contractor from and against any and all liens and claims for labor or material, and against any and all claims, demands, or suits for damages to persons and/or property (including, but not limited to claims, demands, or suits for bodily injury, illness, disease, death, loss of services, maintenance, cure, property or wages), which may be brought against Drilling Contractor (including, but not limited to those brought by Subcontractor’s employees and agents and the agents and employees of its subcontractors) incident to, arising out of, in connection with, or resulting from the activities of Subcontractor, its employees and agents, or its subcontractors and their employees and agents, or in connection with the work to be performed, services to be rendered, or material to be furnished, under this contract, or under contracts referred to in 1(b) above, whether occasioned, brought about or caused in whole or in part by the negligence of Drilling Contractor, its agents, directors, officers, employees, ser *277 vants or subcontractors, or otherwise, or by the unseaworthiness of any vessel owned, operated or controlled by Drilling Contractor, regardless of whether such negligence or unseaworthiness be active or passive, primary or secondary.
At trial, Quality contended that this provision did not obligate it to indemnify ODE-CO on Mott’s claim. Quality argued that paragraph 9 did not extend to coverage of accidents caused by ODECO’s negligence with respect to defects pre-existing execution of the contract. Contending that paragraph 9 was ambiguous with respect to such accidents, Quality offered the testimony of its president, Max Harding. Harding was permitted to testify over ODECO’s objection. The essence of his testimony was that the parties did not intend to provide indemnification for claims arising from pre-exist-ing defects. ODECO offered no contrary testimony. The district judge, sitting as the trier of fact on this aspect of the case, found that the parties did not intend to include claims of this character within the ambit of Quality’s obligation to indemnify ODECO. Finding further that the defect in the ladder pre-existed execution of the Master Service Contract, the court held that Quality was under no obligation to indemnify ODECO on Mott’s claim.
We find no error here requiring reversal. The trial court ruled correctly that the parol testimony of Harding was admissible to clarify an ambiguity in the contract. While it is true that paragraph 9 uses very broad language in describing the scope of Quality’s obligation and purports to be a cosmic clause, none of paragraph 9’s lengthy string of phrases expressly refers to injuries caused by pre-existing defects. The mere use of the phrase “any and all claims” in an indemnity clause does not suffice unambiguously to sweep within it the literal reach of the words used. See Brown v. Seaboard Coast R. R. Co., 554 F.2d 1299, 1302 and n. 3 (5th Cir. 1977); see also Batson-Cook Co. v. Industrial Steel Erectors, 257 F.2d 410, 414 (5th Cir. 1958) (“it is an area in which to cover all does not include one of the parts”) (emphasis in original). Indeed, in the context of contractual indemnity provisions, the use of such a phrase standing alone is inadequate as a matter of law to include any claim for injuries caused by the negligence of the indemnitee. See, e. g., Green v. Taca International Airlines, 304 So.2d 357, 361 (La. 1974) (contract of indemnity will not be construed to indemnify indemnitee against losses resulting to him through his own negligence, where such intention is not expressed in unequivocal terms); Arnold v. Stupp Corp., 204 So.2d 797 (La.App.1967) (“any and all liability”); Buford v. Sewerage and Water Bd. of New Orleans, 175 So. 110 (La.App.1937) (“all suits or actions of any name or description”). While paragraph 9 of the Master Service Contract does expressly require Quality to indemnify ODECO for losses caused by ODECO’s own negligence, the rule of construction adopted in these cases precludes us from holding paragraph 9 unambiguous with respect to a particular subclass of claims simply because the phrase “any and all claims” is employed.
The phrase “any and all claims” is, moreover, qualified by the requirement that the claims be “incident to, arising out of, in connection with, or resulting from the activities of Subcontractor, its employees and agents . . ..” These qualifiers, while hardly words of limitation, do admit of interpretation and sometimes subtle distinction. See, e. g., Martin Wright Electric Co. v. W. R. Grimshaw Co., 419 F.2d 1381 (5th Cir. 1969); Alamo Lumber Co. v. Warren Petroleum Corp., 316 F.2d 287 (5th Cir. 1963). In Martin Wright, we reversed the district court’s grant of summary judgment in favor of Grimshaw, the indemnitee. Wright, the indemnitor, had been hired by Grimshaw to complete certain electrical work. Customarily, Wright’s employees devoted the last fifteen minutes of their working time to storing their tools. As one of the employees, Zoller, left the tool shed area, he tripped on some wire mesh and fell onto a metal dowel which pierced his eye. Zoller died as a result of the injury. At issue was the correct construction of an indemnity contract that required indemnification for any claim “arising out of or re- *278 suiting from the performance by the subcontractor of the work covered by this subcontract.” We held that no indemnity was due since the injury was caused by Grim-shaw’s negligence in inadequately lighting the area and maintaining an unsafe work area. Since this negligence had no “relation to, connection or involvement with” Wright’s electrical work, the claim did not “arise out of or result from” Wright’s performance of its duties. 419 F.2d at 1386-87. Quality’s argument here obviously parallels the indemnitor’s argument in Martin Wright. ODECO’s negligence, if such it was, with respect to the ladder had no relation to Quality’s work aboard the platform. The interpretation we required in that case can hardly be termed so implausible on the facts of this case that parol evidence to support it is inadmissible.
As noted earlier, the only testimony bearing on this question was that of Quality’s president, Max Harding. He testified that the parties did not intend to cover injuries caused by pre-existing defects. The district judge credited Harding’s testimony and construed paragraph 9 in accordance with it. The court’s understanding is supported by the rule that ambiguities in contracts are generally to be construed against the draftsman, here ODECO. Kuhn v. Stan A. Plauche Real Estate Co., 249 La. 85, 185 So.2d 210 (1966); W. N. Bergeron & Sons v. Caldwell Sugar Co-Op. Inc., 340 So.2d 1054 (La.App.1976). While another view of the parties intentions would have been permissible, see Day v. ODECO, 353 F.Supp. 1350 (E.D.La.1973), we cannot say on the basis of this record that the trial court’s view of the parties’ intention is clearly erroneous. Since the court’s further finding, that that the defect in the ladder pre-existed execution of the contract, is not clearly erroneous, the district court’s ruling on the third-party claim must be affirmed.[6]
III. Conclusion
The judgment in favor of Mott against ODECO is therefore REVERSED and the case REMANDED for a new trial. The judgment against ODECO on its third-party claim against Quality is AFFIRMED.

. Apparently, it was originally intended that the jury impaneled to hear Mott’s claim sit as an advisory jury on the indemnity claim. Thus, the opening arguments to the jury included previews of the evidence relevant to the indemnity claim. At the close of all the evidence, however, the judge determined that the jury’s assistance would not be necessary and decided the indemnity issues without referring them to the jury. Neither ODECO nor Quality complains of this on appeal.

. Louisiana law governs this tort action brought under the Outer Continental Shelf Lands Act. 43 U.S.C. § 1333(a)(2). Moczygemba v. Danos & Curole Marine Contractors, 561 F.2d 1149, 1151 and n. 1 (5th Cir. 1977).

. There is no question that the “building” requirement is satisfied in this case. A fixed offshore oil and drilling platform is a “building” within the meaning of Article 2322. Moczygemba v. Danos & Curole Marine Contractors supra, 561 F.2d at 1151; McIlwain v. Placid Oil Co., 472 F.2d 248 (5th Cir. 1973), cert. denied, 412 U.S. 923, 93 S.Ct. 2734, 37 L.Ed.2d 150 (1973).

. McIlwain v. Placid Oil Co., 472 F.2d 248 (5th Cir. 1973) is not to the contrary. The very first sentence of the Mcllwain opinion makes it obvious that there was “fall or collapse” in that case.
In December of 1969 Lankford Mcllwain unexpectedly plummeted into the Gulf of Mexico and was seriously injured when a section of the grated deck of an offshore drilling platform upon which he was working gave way beneath his feet.
Id. at 249. (Emphasis added.)

. We reach this issue notwithstanding our determination that the judgment in favor of Mott must be reversed. The issues pertaining to the indemnity claim have been fully litigated below and on appeal. They will certainly arise again on remand if Mott prevails on his alternate theory of liability. Indeed, since ODECO’s third-party complaint demands indemnification for costs and attorney’s fees, the issue may well have to be met even if Mott does not recover. See Brown v. Seaboard Coast Line R. R. Co., 554 F.2d 1299 (5th Cir. 1977) (judgment entered against plaintiff in trial court; defendant/third-party plaintiff claimed and recovered costs and attorney’s fees under indemnity clause of contract). In the interests of judicial economy, we consider the third-party claim on this appeal.

. In view of our resolution of the third-party claim, we need not reach Quality’s second defense to ODECO’s claim, i. e., that ODECO breached the Master Service Contract by failing to comply with an OSHA standard governing the distance between rungs on a ladder. There is sharp disagreement between the parties as to the applicability of OSHA regulations to fixed platforms on the Outer Continental Shelf. ODECO contends that regulations promulgated by the Secretary of Labor under OSHA are inapplicable since such regulations are not to apply to “working conditions” with respect to which other agencies “exercise” regulatory authority, 29 U.S.C. § 653(b)(1). The Coast Guard, ODECO asserts, exercises such authority over fixed platforms on the Outer Continental Shelf. See 43 U.S.C. § 1333(e); 33 C.F.R. § 143 (1977). Quality, pointing out that the Coast Guard has issued no regulations concerning the safety of ladders on fixed platforms, contends with equal vigor that the Coast Guard has not “exercised” its authority with respect to the particular “working condition” in question. Absent such exercise, OSHA standards must apply, says Quality, since OSHA specifically provides that it shall be applicable to the Outer Continental Shelf lands. See 29 U.S.C. § 653(a).
These arguments present questions of considerable difficulty, complexity, and refinement. Our leading case on the displacement of OSHA standards elaborates an approach quite sensitive to nuance. See S. Pac. Transp. Co. v. Usery, 539 F.2d 386 (5th Cir. 1976). We doubt seriously that these issues can be adequately addressed and correctly resolved in the context of this dispute between two private parties and in the absence of both of the two public agencies primarily interested. Cf. Marshall v. Northwest Orient Airlines, Inc., 574 F.2d 119 (2d Cir. 1978) (refusing to decide whether regulations of Federal Aviation Administration displaced OSHA standards until fully adequate administrative record developed). Since our disposition of the indemnity claim on other grounds makes it unnecessary to reach the question of the OSHA standard’s applicability, we express no views whatsoever on this question.