Carl A. GANTT, Plaintiff-Appellee,

v.

MOBIL CHEMICAL COMPANY, Defendant-Third Party Plaintiff-Appellee-Appellant,

v.

STEARNS-ROGER CORPORATION, Third Party Defendant-Appellant.

No. 71-2451.

United States Court of Appeals, Fifth Circuit.

June 21, 1972.

Rehearing Denied July 14, 1972.

692

Robert E. Barnes, Beaumont, Tex., for
Stearns-Roger Corp.

Arthur L. Schechter, Downman, Jones & Schechter, Houston, Tex., for plaintiff-appellee Carl A. Gantt.

Cleve Bachman, Beaumont, Tex., Maurice Amidei, Mobil Chemical Co., Dallas, Tex., Tom Normand, Orgain, Bell & Tucker, Beaumont, Tex., for Mobil Chemical Co.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

During the night shift of May 25, 1969, Carl A. Gantt (Gantt), an employee of the Stearns-Roger Corporation (Stearns), fell from a ladder and suffered personal injuries. Stearns was performing contract maintenance work at the Beaumont, Texas, plant of the Mobil Chemical Company (Mobil). Gantt brought suit against Mobil for damages. Relying upon an indemnification clause in its contract with Stearns, Mobil brought a third-party action against Stearns to recover any amount that it might be required to pay to Gantt. Insurance Company of North America (INA), the workmen's compensation carrier for Stearns, intervened to recover benefits paid to Gantt under the Texas Workmen's Compensation Act.

The jury awarded Gantt damages against Mobil in the amount of $40,000.00. It found for Stearns on Mobil's claim for indemnification under the basic contract. The district court entered judgment for Gantt against Mobil in the sum of $41,147.00 with legal interest and court costs; it entered judgment notwithstanding the verdict in favor of Mobil with respect to its indemnification claim against Stearns in the amount recovered by Gantt, and it awarded $5,000.00 as attorney's fees to Mobil against Stearns. Mobil and Stearns appeal from the entry of judgment in favor of Gantt, and Stearns appeals from the district court's indemnity award against it in favor of Mobil. INA's appeal from the district court's failure to adjudicate its claim for disbursed workmen's compensation benefits has been resolved by means of a stipulation entered into following the oral argument of this case. For the reasons given below, we affirm the judgment in favor of Gantt, reverse the district court's entry of judgment n. o. v. in favor of Mobil against Stearns, and remand with directions to reinstate the jury's verdict.

## GANTT'S INJURY

At trial, Gantt and Mobil advanced sharply differing testimony as to how the fall from the ladder occurred. Summaries of each version will help to clarify the appellate contentions of the parties.

According to Gantt, he and a fellow worker, James Eaves, Sr., were told by their foreman, Ralph Franklin, to crack an ammonia line and take out a valve. As they loosened the nuts on the valve flange, the gasket separated slightly and ammonia started coming out. Gantt and Eaves, Sr., retightened the flange and reported the situation to their foreman. When they first reported to Franklin he suggested that they hold their breaths, take a bolt out, get some air and continue the job by repeating that procedure. They returned to the job to follow Franklin's suggestions, but the ammonia continued to escape as they backed off a nut or removed a bolt. Gantt, as a result of the inhalation of ammonia fumes, became dizzy and groggy. After the valve was removed, Eaves, Sr., wanted to smoke, so they started toward the smoke shack. Gantt had no recollection of the events after this until he awakened in a hospital with several injuries.

Gantt filled this gap through the testimony of James Eaves, Jr., a fellow Stearns employee. Eaves, Jr. testified that while he was working about fifteen feet away from Gantt, it became necessary for him (Eaves, Jr.) to procure a ladder to get up about fifteen feet in the air to tighten some flanges on a pipe. Eaves, Jr.'s partner departed to get a drink of water. At this point Gantt came by, inquired as to what was going on, and, upon being told, volunteered to "go up and get it". Gantt was given

two wrenches by Eaves, Jr. and upon reaching the top of the ladder, teetered and fell. Eaves, Sr. corroborated Gantt's version of the instructions received from Franklin.

Mobil's version of the events leading up to Gantt's accident was based primarily upon the testimony of the Stearns foreman, Franklin. He recalled that Gantt and a fellow worker were assigned to the duty of tightening a valve flange on a water line which was about to be tested with pressure. The valve was about ten feet overhead. The men procured a ladder and Gantt ascended it with two wrenches. Franklin left the area momentarily and upon returning he saw one of the wrenches slip and Gantt fall over the front of the ladder, hitting his head on the floor. Franklin denied that Gantt was assigned to any job that night involving the cracking or breaking of a line containing ammonia or removing a valve from any line in the area described by Gantt. The foreman also asserted that he never would have let his men continue to work in an area where ammonia was escaping from a line. In sum, the entire defense was based on Franklin's testimony that the earlier incident described by Gantt and corroborated by Eaves, Sr. simply never took place.

## THE TRIAL THEORIES OF THE PARTIES

Gantt charged that Mobil was negligent in one or more of the following particulars, rendering it liable for his injuries proximately resulting from its breach of duty:

1. Mobil failed to warn Gantt of the presence of noxious fumes in the area in which he was working.

2. Mobil failed to provide Gantt with a reasonably safe place in which to work.

3. Mobil allowed the fumes to accumulate at a place and time when Mobil knew or in the exercise of ordinary care should have known that said presence constituted a peril to those working the area, including Gantt.

4. Mobil failed to properly drain ammonia from the pipes in question when Mobil knew that subcontractors and employees of subcontractors such as Gantt would be attempting to remove and work around these pipes and would be exposed to the dangerous fumes, thereby sustaining injury such as that sustained by Gantt.

5. Mobil failed to properly inspect the pipes in question to ascertain that they were drained of all the noxious ammonia though Mobil knew or in the exercise of ordinary care should have known that this constituted a peril to those working in the area.

Mobil answered by denying the allegations of negligence and by interposing several defenses of an affirmative nature:

1. Gantt was guilty of contributory negligence.

2. Gantt's injuries were sustained as the result of an unavoidable accident.

3. Gantt's accident and injuries, if any, were sustained not as a result of the condition of the premises or the place of work, but as a result of the manner in which the job was being performed by Gantt and his fellow employees of Stearns.

4. Gantt assumed the risk of all dangers involved in the job he was performing.

5. Any dangers complained of by Gantt were open and obvious.

6. Franklin's knowledge of the escaping ammonia fumes constituted a complete defense to the liability of Mobil.

As noted earlier, Mobil filed[1] a third-party complaint against Stearns for any amount recovered by Gantt for indemnification. This claim was based upon Section 12.1 of the contract be-

---

1. Under Rule 14(a), Federal Rules of Civil Procedure.

tween the parties dated January 18, 1968, providing:

"Contractor" (Stearns) "shall indemnify and hold Company" (Mobil) "harmless against all losses, expenses, and claims (including those of the parties, their agents and employees) for death, personal injury or property damage arising out of the work performed hereunder whether by Contractor or any subcontractor or other respective employees, agents, or invitees provided, however, Contractor shall not be liable hereunder for loss of damage to Company's property, in excess of the limits of the insurance coverage Contractor is herein required to provide, caused by the perils of fire, lightning, explosion, or other extended coverage, perils regardless by whom so caused, and Company shall obtain for Contractor's benefit a waiver of subrogation rights consistent with this limitation under Company's insurance policies, if any, covering said property."

Mobil maintained that the above-quoted contractual provision required indemnification from Stearns for any amounts Mobil was ordered to pay to Gantt as damages for personal injuries suffered on Mobil's premises. Stearns denied liability for indemnity urging that Mobil's own negligence in failing to bleed the ammonia line was the sole proximate cause of Gantt's injuries and that Section 12.1 of the contract did not shift responsibility for the results of Mobil's negligence to Stearns.

## THE JURY INSTRUCTIONS

Since the court's charges are the basis for a number of claimed errors on appeal, we find it convenient to set forth the critical instructions at this point.

The trial judge charged the jury as to a land-owner's duty of care to employees of independent contractors in the following terms:

"You are instructed that the Defendant, Mobil Chemical Company, has a legal duty to exercise ordinary care in keeping its premises in a reasonable safe condition for employees of independent contractors or sub-contractors and its employees, such as the Plaintiff. It has a duty only with respect to such conditions which are in the nature of hidden dangers. However, in that they are not known to such independent contractors or independent contractors employees and would not be obvious to them in the exercise of ordinary care. You are instructed that as to any conditions upon the premises, which were open and obvious, the Defendant was under no duty with respect to employees of independent contractors such as Carl A. Gantt, who assumes all ordinary risks —attendant upon the use of the premises such open and obvious conditions. Now open and obvious conditions is one which can be observed by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances. A condition is open and obvious to a person if such person knows and appreciates the extent of the danger involved. An open and obvious condition is one which is not in the nature of a hidden or concealed danger, trap, snare or pitfall or the like, but is one which can be observed in the exercise of ordinary care under the same or similar circumstances.

"In other words, the Defendant, Mobil Chemical Company, has a duty to provide a reasonably safe place for people to work who are employees of an independent contractor such as the Plaintiff in this case. The Plaintiff had a right to go upon the premises and had a right to expect and believe that the premises would be reasonably safe for him to work upon. On the other hand, the Plaintiff had a duty to use the care of an ordinary prudent person for his own safety."

The concept of Mobil's negligence was explained to the jury as follows:

"Now, the Plaintiff contends that the Defendant, Mobil Chemical Company,

was negligent in allowing the fumes to accumulate at a place and time, speaking of ammonia fumes, at a place and time when Defendant knew or in the exercise of ordinary care should have known that said presence constituted a peril to those working in the area including Plaintiff. Also, in failing to properly drain ammonia from the pipe in question when Defendant knew that sub-contractors and employees of sub-contractors, such as Plaintiff, would be attempting to remove and work around these pipes and would be exposed to the dangerous fumes and thus would sustain injury such as that sustained by the Plaintiff. Further, in failing to properly inspect pipe in question to ascertain that they were drained of all the noxious ammonia, though Defendant knew or in the exercise of ordinary care should have known that this constituted a peril to those working in the area. Also, in failing to warn Plaintiff of the presence of noxious fumes in the area which Plaintiff was working and also in failing to provide Plaintiff with a reasonably safe place in which to work. The Court therefore instructs you that if you find from a preponderance of the evidence that the Defendant is guilty of any one of these acts or omissions of negligence and that such negligence was a proximate cause of the injury and harm sustained by the Plaintiff and you do not find that the Plaintiff was himself guilty of contributory negligence then you would find for the Plaintiff and against the Defendant."

Regarding Mobil's contention that the alleged danger was or should have been obvious to Gantt, the district judge advised the jury:

"Further, you are instructed that if you find from a preponderance of the evidence that the condition or danger in question, the ammonia in the line was open and obvious at the time the Plaintiff removed the valve or if you should find that the Plaintiff knew of the dangerous condition or that his foreman knew of the dangerous condition at the time that he removed the valve and that he appreciated the danger and notwithstanding that fact, did remove the valve which caused him to inhale the ammonia, then you would find for the Defendant and against the Plaintiff."

Proximate causation was explained to the jury in the following terms:

"Now, the Plaintiff alleges that the Defendant's conduct at the time and on the occasion in question constituted a failure to exercise a high degree of care which was incumbent upon it in the handling of a product as dangerous as anhydrous ammonia and thus constituted negligence which proximately caused his injury. Now, PROXIMATE CAUSE, as that term is used in this charge, means the moving of (sic) any efficient cause without which the injuries would not have happened and an act of omission becomes the proximate cause of an injury whenever such injury is the natural and probably consequences of such acts or omission in question, there can be more than one proximate cause of an accident."

The trial judge instructed the jury that Mobil was charged with a higher than ordinary duty of care to Gantt:

"The term NEGLIGENT as it refers to the Plaintiff is weighing any potential contributory negligence on his part is defined as the failure to use ordinary care and ORDINARY CARE means such care as a person of ordinary prudence would exercise under the same or similar circumstances. NEGLIGENCE as applied to the Defendant, Mobil Chemical Company, however, has a different meaning because the Defendant was manufacturing a dangerous product, anhydrous ammonia, on its premises. It has a duty to exercise a high degree of care for those working on its premises. By HIGH DEGREE OF CARE is meant that the care that would be exercised by extra caution and an extra

prudent person under the same or similar circumstances. The reason for this distinction in the conduct of the Defendant, Mobil Chemical Company, and the Plaintiff and that less burdensome degree of conduct required by the Plaintiff is that varying circumstances require different degrees of diligence and efficient in determining whether a person or corporation has performed the duties that the law requires of it. Persons who keep in their possession or employ or business keep in their possession or employ or business instrumentalities or products that unless carefully and cautiously used are dangerous to others must exercise care to see that the dangerous agent is kept in use not to inflict injury upon others. To put it another way, as a danger that should be foreseen increases so the amount of care required by law increases."

The jury was instructed as follows regarding Mobil's third-party complaint against Stearns:

"Now, assuming that you will find from a preponderance of the evidence that the Plaintiff is entitled to recover some damages as a result of the negligence of the Defendant, which negligence was a proximate cause, then you will consider the third party action, which is brought by Mobil Chemical Company against Stearns-Roger. And you are instructed that if you believe from a preponderance of the evidence that Plaintiff's injury arose out of Mobil Chemical Company's failure to drain the ammonia gas from the line in question and that draining such gas was under the exclusive jurisdiction and control of Mobil Chemical Company and neither a part of nor related to the work to be performed by Stearns-Roger Corporation, then you will return a verdict against Mobil Chemical Company, and in favor of Stearns-Roger Corporation in connection with the third party complaint."

Post-trial motions by Mobil and Stearns were denied by the district court, with the exception that Mobil's motion for judgment n. o. v. was granted on its third-party complaint against Stearns for indemnification. The court granted Mobil's earlier motion for directed verdict against Stearns under Rule 50(b), F.R.Civ.P.

## THE APPELLATE CONTENTIONS OF THE PARTIES

Mobil and Stearns, in their joint appeal from the judgment entered in favor of Gantt, seek reversal on the following grounds:

1. The district court erred in charging the jury to find for Gantt against Mobil if they believed that Mobil was guilty of a single act or omission of negligence rather than charging the jury concerning the alternative nature of Mobil's duties to Gantt.

2. The district court erroneously rejected Mobil's contention that Franklin's knowledge of the situation was a complete defense to Gantt's claim against Mobil.

3. The district court erroneously failed to charge the jury to the effect that Franklin's knowledge of dangers which caused Gantt's injury would insulate Mobil from liability.

4. The district court erred in failing to hold that Mobil was insulated from liability under the doctrine of "assumed risk" or "volenti non fit injuria".

5. The district court erred in failing to include in that part of its charge defining proximate cause the element of foreseeability.

6. The district court erred in charging the jury that Mobil owed a "high degree of care" to Gantt.

7. The district court erred in failing to order a remittitur or to set aside the verdict because of the excessiveness of the damages awarded by the jury.

Stearns' separate appeal is limited to a challenge to the district court's grant of judgment n. o. v. for Mobil against Stearns for indemnity and attorney's fees.

As might be predicted, Gantt—as to the joint appeal of Mobil and Stearns, and Mobil—as to the indemnity claim against Stearns, each endorse and support the rulings below.

## THE JOINT APPEAL OF MOBIL AND STEARNS

Preliminarily we observe that although all parties agree that as to all questions of substantive law presented on this appeal Texas law governs under Erie Railroad Company v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, there is considerable disagreement as to what the Texas law is in several particulars. Additionally, from time to time on brief, each of the parties occasionally adopts inconsistent positions as to the facts. Our discussion will develop some of those inconsistencies, as we try to pick our way gingerly through the occasionally bewildering thicket of Texas law guided by the sometimes dim and flickering *Erie* light.

■ Mobil and Stearns (whom we will occasionally refer to as the "joint appellants") first assert that the district court erred in instructing the jury to find for Gantt against Mobil if they believed from a preponderance of the evidence that Mobil was guilty of any *single* act or omission of negligence toward Gantt, rather than casting its instruction in terms of the alternative duty of Mobil *either* to warn of danger *or* to make sure that the premises were safe for Gantt to enter and perform his duties. In this regard the joint appellants rely upon Section 343 of the A.L.I. Restatement of Torts, as approved by the Texas Supreme Court in Western Auto

Supply Company v. Campbell, Tex.Sup. Ct.1963, 373 S.W.2d 735.[2] While agreeing that Section 343 is clearly couched in terms of the duty to warn and the alternative duty to render the premises safe for business invitees (such as Gantt, an employee of an independent contractor), we find this assignment to be without merit. This is so because there was no evidence introduced at trial remotely tending to establish that Mobil warned the employees of Stearns of the existence of escaping ammonia from its pipes. The defense took a completely different tack, being based on Franklin's denial that the incident occurred. Under these circumstances, it was not reversible error for the trial judge to instruct the jury, with regard to Mobil's duties as an occupier or owner of real property, that if they found that Mobil was guilty of any one of the acts or omissions of negligence asserted a verdict in Gantt's favor was in order.

Citing Delhi-Taylor Oil Company v. Henry, Tex.Sup.Ct.1967, 416 S.W.2d 390, the joint appellants next contend that the court below erroneously rejected Mobil's position that Franklin's knowledge of the situation was a complete defense to Gantt's claim against Mobil. It is true that in *Delhi-Taylor* the Texas Supreme Court did hold that an owner or occupier of property owes a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden danger on the premises *or* to warn them thereof and that adequate warning to *or* full knowledge by the independent contractor of the danger will discharge the alternative duty of the owner or occupier of the property to warn the independent con-

---

2. As expressed by the Texas Supreme Court in *Western Auto*:

"This Court has at least twice cited with approval Section 343 of the Restatement of Torts. As applicable here that section provides:

" 'A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereof, if, but only if, he

" ' . . .

" ' . . .

" '(c) invites or permits them to enter or remain upon the land without exercising reasonable care

" '(i) to make the condition reasonably safe, or

" '(ii) to give a warning adequate to enable them to avoid the harm. . .' "

373 S.W.2d at 736.

tractor's employees. Coming down to this case, the foreman Franklin's knowledge was Stearns' knowledge.

■ On this appeal, however, the joint appellants take a position respecting Franklin's knowledge of the escaping ammonia directly opposite to the position taken by Mobil in the district court. As noted earlier, Mobil sought to defend itself in the court below by asserting that Franklin never ordered Gantt to crack a line containing ammonia. Mobil even offered Franklin's testimony to establish this point. Against this background, we agree with Gantt's contention that the jury could logically have disbelieved testimony tending to prove that Franklin was advised of the existence of escaping ammonia but in turn could have also credited the balance of the evidence offered by Gantt. We do not find that error occurred with respect to this assignment.

The joint appellants further urge reversal on the theory that the district court erroneously failed to instruct the jury to the effect that Franklin's knowledge of dangers which led to Gantt's injury would insulate Mobil from liability. As noted earlier in this opinion, the jury was advised that:

> "Further, you are instructed that if you find from a preponderance of the evidence that the condition or danger in question, the ammonia line was open and obvious at the time Plaintiff removed the valve or if you should find that the Plaintiff knew of the dangerous condition *or that his foreman knew of the dangerous condition at the time he removed the valve* . . . . then you will find for the defendant and against the plaintiff." (Emphasis supplied)

■ We believe that the excerpted instruction to the jury adequately advised the triers of the facts that if they found that Franklin knew of the dangerous condition prior to the accident, then they were to find against Gantt and in favor of Mobil.

Next, the joint appellants claim that the district court erred in failing to hold, as a matter of law, that Mobil was not liable to Gantt under the Texas doctrine of assumption of risk (usually referred to by Texas lawyers and courts in its Latin form, "volenti non fit injuria", or "volenti" for short). The same jury instruction which dealt with Franklin's knowledge of the escaping ammonia also embraced the "volenti" claim put forward by Mobil.[3]

■ Applying the standards we laid down in Boeing Company v. Shipman, 5 Cir. 1969, en banc, 411 F.2d 365, we perceive no reversible error in the district court's submission of the "volenti" issue to the jury in this case. Rather, the factual disputes present mandated jury submission. Whether or not Gantt knew of facts constituting a dangerous condition, knew that the condition was dangerous, appreciated the extent of the danger, and voluntarily exposed himself to the danger were all matters which were strongly contested. The district court committed no error in refusing to enter judgment for Mobil as a matter of law on the basis of the "volenti" doctrine. The issue was properly submitted to the jury under appropriate instructions.

The next contention of the joint appellants is that the district court committed reversible error in failing to include the element of foreseeability in that part of its jury charge defining the concept of proximate cause. Gantt concedes that the foreseeability element was not included in the definition of proximate cause given to the jury, but argues that its omission in this case constituted, at most, harmless error.

> "There is no set rule for the definition of proximate cause applicable to all cases. Each case must be considered from the pleadings and evidence

---

3. Thus: "or if you should find that the plaintiff knew of the dangerous condition * * * at the time he removed the valve * * * then you will find for the defendant and against the plaintiff."

before the court. However, as the term 'proximate cause' has a well-settled and long-established legal meaning, a definition in the language usually used in expressing the meaning is all that is required in embodying its definition in a charge to the jury, without regard to the quality of the act of negligence alleged. Numerous definitions have been approved. Proximate cause is ordinarily defined as a cause that in a natural and continuous sequence, unbroken by any new or independent cause, produces the injury and without which the injury would not have occurred and from which it ought to have been foreseen or reasonably anticipated by a person in the exercise of ordinary care that the injuries complained of, or some similar injury, would result naturally and probably in the light of the attending circumstances.

"The element of foreseeableness is essential in a definition of proximate cause and the omission of reference to foreseeableness may constitute reversible error, *unless the evidence was conclusive as to the issue.*" 40 Tex. Jur.2d., Negligence, § 178, pp. 726–728. (Emphasis added)

St. Louis, S.F. & T. Ry. Co. v. Green, Tex.Comm. of Appeals, 1931, 37 S.W.2d 123, was a suit by a railroad worker against his employer for personal injuries. The plaintiff charged that while he was performing his work in using a sledge hammer to drive a rivet out of the sill of a car, the jar occasioned thereby caused a steel post weighing about one hundred twenty-five pounds, which had been left unfastened at the top and insecurely fastened at the bottom, to fall upon him. The Commission held that the factual issue of proximate causation was clearly raised by the evidence and that under those circumstances the defendant railroad was entitled to a definition of proximate cause which included the element of foreseeability.

In Gulf Pipe Line Co. v. Bailey, Tex. Civ.App. Texarkana, 1931, 40 S.W.2d 938, n. r. e., suit was brought to recover damages for the loss and injury in value to a herd of 393 cattle in pasture on land adjoining the levee along the south bank of the North Sulphur River. It was alleged that the pasture lands were flooded as a result of the giving way of a particular section of the levee at the point where the Gulf Pipe Line Company ran a pipe line in the earth beneath the base of the levee. According to the plaintiff, the collapse of the levee was caused by the negligence of Gulf Pipe Line in the manner in which it tunneled in the earth, made the excavations for the pipe, and refilled the passageway after the pipe was put in place. In rejecting the defendant's appellate contention that the trial court had committed reversible error by failing to include the element of foreseeability in the definition of proximate causation given to the jury, the Court of Civil Appeals observed:

"There is no pretense in the evidence of any other cause for injury except the flood. The break in the levee let the floodwaters over and upon the adjoining pasture land. Impounded waters, as the appellant must be held to have known would come within the levee, embody perils when the embankment is weakened by excavation. Appellant could, as conclusively appears, have reasonably foreseen the harmful results in evidence." 40 S. W.2d at 940.

We believe it significant that the Supreme Court of Texas, in Dallas Railway & Terminal Co. v. Black, 1953, 152 Tex. 343, 257 S.W.2d 416, acknowledged the validity of some of the criticism of the custom of including the element of foreseeability in jury charge definitions of proximate cause. 257 S.W.2d at 418.

At trial, Mobil did not contest the proposition that escaping ammonia could foreseeably result in personal injuries to those who inhale such fumes. Several of its witnesses, notably Pope, a production supervisor, and Wright, a Georgia Tech Chemical Engineering graduate and a 19-year Mobil employee

who was its Production Superintendent at the time of the accident, as well as Mr. Ralph Franklin, the Stearns foreman, testified to the serious danger to personnel in opening an ammonia line not completely cleared. *There was no evidence to the contrary.* The defense of Mobil was on the all-or-nothing theory that the valve cracking incident simply did not occur. The brief of the joint appellants on this point relies exclusively on the decided Texas cases dealing with the foreseeability element and fails to isolate the manner in which the omission of the foreseeability element in the charge given to the jury in this case prejudiced the rights of Mobil and Stearns. Under the circumstances present, where foreseeability was not even remotely contested, the failure to define foreseeability as an element of proximate cause was at most "harmless error", if indeed it was error at all.

Yet another theory advanced by the joint appellants in support of their quest for a reversal of the judgment below is that it was error for the trial judge to charge the jury that Mobil owed a "high degree of care" to Gantt. The joint appellants assert that the duty Mobil owed to Gantt was that of "ordinary care" only.

We approach this question by first taking judicial notice of the poisonous qualities of anhydrous ammonia.[4] It is undisputed on this record that ammonia fumes may be highly dangerous to human life. In Collier v. Hill & Hill Exterminators, Tex.Civ.App. Houston, 1959, 322 S.W.2d 329, no writ history, the parents of a deceased infant brought suit against professional exterminators for the infant's death from poisoning because the exterminators negligently used phosphorous poison in their efforts to exterminate roaches and silver fish in the home of the plaintiffs. After a jury verdict for the plaintiffs the trial court granted the defendants judgment n. o. v. The Texas appellate court reinstated the jury verdict, observing:

"Poison is a dangerous instrumentality comparable to explosives. In using poison a person should exercise a high degree of care to protect against injury to others. . . ." 322 S.W.2d at 336–337.

The district court was not in error when it instructed the jury that Mobil was under a duty to exercise a high degree of care for those working on its premises. It was there manufacturing ammonia, a dangerous product.

Finally, the joint appellants urge that the district court erred in failing to order a remittitur or in failing to set aside the jury's verdict on the ground of excessiveness. In addition to disputing the accident-related disabilities enumerated by Gantt, the joint appellants point to the fact that Gantt earned $9,000 in 1968, $7,500 in 1969, and $8,500 in 1970 as a pipe fitter and iron worker. In response, Gantt points to the dramatic increases in wage rates obtained by pipe fitters and iron workers in recent years and asserts that had he been able to work as continuously as he did before the accident he would have earned more than $11,000 in 1970. Eaves, Jr., who started work as a pipe fitter at the same time plaintiff did, earned that amount in 1970. After studying the evidence in the record as to damages, and bearing in mind the narrow scope permitted us in the review of such questions,[5] we are

---

4. Chapter 132, Volume 4, Gray's Attorney's Textbook of Medicine, written by Dr. Eugene Y. Berger, notes:

"Ammonia is a highly irritant and suffocative gas. The response of different persons to various concentrations as reported in the literature is given in the table below, which shows that with short exposure, concentrations of 5,000–10,000 p. p. m. may be fatal, and death may result from prolonged exposure for ½ to 1 hour at 3,000 p. p. m. The maximum acceptable concentration (threshold limit value) for eight hours' exposure daily is at present considered to be 100 p. p. m." Pages 132–133.

5. See, e. g., Gorsalitz v. Olin Mathieson Chemical Corporation, 5 Cir. 1970, 429 F.2d 1033, citing with approval Taylor

unable to say that the jury's verdict in the amount of $40,000 was excessive.

## THE INDIVIDUAL APPEAL OF STEARNS

A single question of contractual construction is presented by the individual appeal of Stearns: In executing their contract, did Mobil and Stearns intend that Mobil would be entitled to indemnification from Stearns for damages which it was compelled to pay as a result of Mobil's own negligence? As we have noted above, the trial judge instructed the jury that if it found that Gantt's injury arose out of Mobil's failure to drain the ammonia gas from the line in question and that the draining responsibility was solely that of Mobil, then it should return a verdict in favor of Stearns against Mobil. On the issue of indemnification thus framed the jury found for Stearns. The district court set that verdict aside and rendered judgment for Mobil.

The difficulties the Texas Supreme Court has experienced in dealing in recent years with indemnity agreements where the negligence involved is that of the indemnitee, either arguably or clearly, may be examined through a study of the cases noted in the margin.[6] We leave careful analysis of the holdings of the cases and delineation and discussion of their various shadings for consideration by the Law Review writers. To attempt such a dissection here would unjustifiably prolong this diversity case opinion and would add nothing of lasting value to the jurisprudence.

For we are persuaded that the latest Texas Supreme Court decision, Joe Adams & Son v. McCann Construction Company, 1971, 475 S.W.2d 721, is controlling. The holding in *McCann*, in our view necessitates the reversal of the district court's grant of judgment n. o. v. to Mobil on the indemnity issue. The facts of that case, as stated by the Texas Supreme Court, were as follows:

"McCann was the general contractor for the erection of a building and contracted with Adams to do certain concrete work. McCann built wooden forms extending some eighteen to twenty feet above ground level into which forms employees of Adams were to pour concrete from above for piers, beams and canopies. While three of Adams' employees were on top of the forms pouring concrete, the forms collapsed, and they, the wet con-

v. Washington Terminal Company, 1969, 133 U.S.App.D.C. 110, 409 F.2d 145, cert. denied, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85: denial by district judge of motion for new trial based upon excessiveness of the verdict will be reviewed only for "abuse of discretion".

In Whiteman v. Pitrie, 5 Cir. 1955, 220 F.2d 914, we approved an abuse of discretion test.

C. F. Sunray Oil Corp. v. Allbritton, 5 Cir. 1951, 187 F.2d 475, rehearing denied 1951, 188 F.2d 751, cert. denied 1951, 342 U.S. 828, 72 S.Ct. 51, 96 L.Ed. 626, dissenting opinions of Circuit Judge Holmes, 187 F.2d at 477 and 188 F.2d at 752.

6. Ohio Oil Company v. Smith, Tex.Sup. Ct.1963, 365 S.W.2d 621; Spence and Howe Construction Co. v. Gulf Oil Corp., Tex.Sup.Ct.1963, 365 S.W.2d 631; City of Beaumont v. Graham, Tex.Sup.Ct. 1969, 441 S.W.2d 829, and Joe Adams & Son v. McCann Const. Co., Tex.Sup.Ct.

1971, 475 S.W.2d 721, including Chief Justice Calvert's dissent at p. 726 of 475 S.W.2d.

See also the Texas Court of Civil Appeals decision in McCann Const. Co. v. Joe Adams & Son (Tex.Civ.App.Ft. Worth, 1970, writ granted) 458 S.W.2d 477, as well as two other Court of Civil Appeals decisions as to which the Texas Supreme Court refused writs: Westinghouse Electric Corp. v. Childs-Bellows, (Tex.Civ.App.Ft. Worth, 1961, writ. ref'd.) 352 S.W.2d 806, and Brown & Root, Inc. v. Service Painting Co. of Beaumont (Tex.Civ.App. Beaumont, 1969, writ ref'd.) 437 S.W.2d 630.

This Court has struggled with the Texas law indemnity problem, Alamo Lumber Co. v. Warren Petroleum Corp., 5 Cir. 1963, 316 F.2d 287; Martin Wright Electric Co. v. W. R. Grimshaw Co., 5 Cir. 1969, 419 F.2d 1381; and the Tenth Circuit had occasion to examine it in Sinclair Oil & Gas Co. v. Brown, 10 Cir. 1964, 333 F.2d 967.

crete and the three employees all fell to the ground. The employees were injured and they collected workmen's compensation benefits from Adams' insurer. They then sued McCann who called on Adams to defend the suit and filed a third party indemnity action against Adams. The trial court severed out the third party action and tried the damage suit to a jury. All three plaintiffs recovered judgments against McCann for substantial sums as damages upon findings by the jury that certain acts and omissions by McCann in connection with the construction and use of the forms were negligent and proximate causes of the injuries."

McCann's suit for indemnification from Adams was based upon the italicized language appearing in Article VIII of the contract between the parties:

> "The Contractor (Adams) shall protect, indemnify and save McCann Construction Company, Inc., and Owner harmless from any and all claims, suits and actions of any kind or description, for damage or injuries to persons or property received or sustained by any party or parties *through or on account of any act or in connection with the work of the Contractor . . .*"

The trial court granted Adams' motion for summary judgment but the Fort Worth Court of Civil Appeals reversed. 458 S.W.2d 477 (1970). The intermediate appellate court reasoned that Adams' employees would not have been injured had they not been pouring concrete into the forms and that under the quoted contract language the injuries suffered arose "through or on account of any act or in connection with the work of the contractor". In reinstating the trial court's judgment, the Texas Supreme Court observed:

> "Texas follows the general rule that an indemnity agreement will not protect the indemnitee against the consequences of his own negligence unless the obligation is expressed in unequiv-

ocal terms. It is not necessary for the parties to say, in so many words, that they intend to save the indemnitee harmless from liability for his own wrongs, but it is necessary for that intention to clearly appear when all the provisions of the contract are considered in the light of the circumstances surrounding its execution. . . ." 475 S.W.2d at 723.

> "The situation is somewhat different where both parties to the contract will be working on a project and the obligation to indemnify is expressed in general terms that simply purport to protect the indemnitee against liability arising out of acts or in connection with the work of the indemnitor. The indemnity provisions in this case are not part of a contract of insurance but are incident to an undertaking by a subcontractor to do certain concrete work for the prime contractor. Agreements of that nature are usually made primarily to protect the general contractor against loss or liability resulting from operations or physical conditions over which he has no control and which are under the control of the subcontractor. See North American Ry. Const. Co. v. Cincinnati Traction Co., 7th Cir., 172 F. 214. A stipulation in such a contract that refers merely to injuries or damage resulting from the acts or in connection with the work of the subcontractor does not in itself clearly indicate an intention to protect the general contractor against liability for a casualty caused solely by the latter's negligence. It will not be given that effect unless the other provisions of the contract fairly warrant the conclusion that the parties expected to shield the indemnitee even against the consequences of his own wrong." 475 S.W.2d at 724.

Just as the Supreme Court of Texas found nothing in the contract between Adams & Son and McCann Construction Company to "fairly warrant the conclusion that the parties expected to shield the indemnitee even against the consequences of his own wrong", we

find nothing in the contract between Mobil and Stearns to "fairly warrant the conclusion" that Stearns undertook to hold Mobil harmless against the consequences of Mobil's own negligence. The jury found that Gantt was injured solely as a result of Mobil's failure to bleed the line of ammonia before Stearns' employees went to work on it. Under Texas law, as expounded in McCann, Mobil is not entitled to be indemnified by Stearns. Our decision here accords with the views we reached in Martin Wright Electric Co. v. W. R. Grimshaw Co., 5 Cir. 1969, 419 F.2d 1381, cert. denied 1970, 397 U.S. 1022, 90 S.Ct. 1263, 25 L.Ed.2d 532, where Judge Cassibry, writing for this Court, noted:

> "An analysis of the relevant Texas jurisprudence shows that when the accident or injury is caused by the negligence of the indemnitee, the circumstances of the cause of the accident, the negligent acts or omissions, are examined by the courts to determine if they had any connection with, involvement with or relation to the performance of the work of the indemnitor. If they had none, the injuries are not considered as having any 'connection with' the work, 'arising out of' it, or 'resulting from' it under language of contracts having such broad connotation." 419 F.2d at 1385.

The district judge erroneously set aside the jury's verdict denying Mobil's claim against Stearns for indemnification. We direct reinstatement of the verdict.

## CONCLUSION

The judgment of the district court in favor of Gantt against Mobil is affirmed; the judgment of the district court in favor of Mobil against Stearns is reversed and the cause is remanded to the district court with direction to reinstate the jury's verdict in favor of Stearns against Mobil.

Costs as to the primary appeal are to be taxed against Mobil and Stearns jointly; as to the cross-appeal, costs are to be taxed against Mobil.